AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>JACOBI SANFORD<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  4:21-mj-71511-MAG<br>)<br>)<br>)<br>) |

FILED
Sep 23 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  July 13, 2021  in the county of  Alameda  in the
Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g) | Felon in possession of firearm |

This criminal complaint is based on these facts:

See the attached affidavit of Special Agent Jacob D. Millspaugh

☑ Continued on the attached sheet.

Approved as to form  /s/
                     AUSA Overbeck

Sworn to before me by telephone.

Date:  9/22/21

City and state:  San Jose, California

/s/
*Complainant's signature*
Special Agent Jacob D. Millspaugh, FBI
*Printed name and title*

*Judge's signature*
Hon. Nathanael Cousins, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jacob D. Millspaugh, Special Agent of the Federal Bureau of Investigation, being duly sworn, do declare and state:

## INTRODUCTION

1. I submit this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of **Jacobi SANFORD**, for unlawfully possessing a firearm and/or ammunition, in violation of Title 18, United States Code, Section 922(g)(1), on or about July 13, 2021, in the Northern District of California.

2. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, information provided by reports of other law enforcement officers, information provided by video and photographic evidence, and information provided by records and databases. I believe these sources to be reliable. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim. This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds. My experience and training as an FBI Special Agent and my participation in this investigation form the basis of the opinions and conclusions set forth below.

## AFFIANT BACKGROUND

4.     I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since September 2004. I am currently assigned to the San Francisco Field Division of the FBI, and investigate cases involving violent gangs, violent crimes, and drug trafficking. I have received training at the FBI Academy in Quantico, Virginia, including training on violent street gangs, criminal case management, informant development, Title III investigations, as well as the identification, use, packaging and sales of controlled substances. I have participated in numerous local and federal search warrants and arrests involving alleged firearms trafficking, narcotics trafficking, homicide, robbery, pimping and pandering, weapons offenses, and other violent criminal activities. I have participated in numerous investigations of narcotics traffickers, violent street gangs, gang members, and pimps. These investigations have involved the use of confidential sources, wire, and physical surveillance. I have participated in numerous investigations involving gang-related crimes, including homicides and weapons offenses, and in the execution of numerous search warrants relating to such investigations.

5.     During the course of my career with the FBI, I have interviewed firearms traffickers, drug dealers, drug users, gang members, pimps, prostitutes and knowledgeable confidential informants about their lifestyles, appearances, and habits. I have become familiar with the manner in which firearms traffickers, gang members, drug dealers, and pimps use telephones, cellular telephone technology, wireless messaging, digital photography, internet social networking, intentionally vague language, including coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law enforcement investigations.

6.     I have received formal training at the FBI Academy's Basic Agent Training in Quantico, Virginia. During this five-month course, I received training related to gang and firearms investigations, including many that provided instruction on firearm trafficking methods, money laundering methods, and techniques for investigating those crimes. Throughout my law

2

enforcement career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators.

7. I also have participated in surveillance of gang members, firearms traffickers, pimps, and drug dealers. During surveillance, I have personally observed firearms and narcotics transactions, counter-surveillance techniques, and the ways in which firearms traffickers, drug dealers, and gang members conduct clandestine meetings. I also have participated in investigations that involved the interception of wire communications, and I have been directly involved in the review and deciphering of intercepted coded conversations between drug dealers and gang members that were later corroborated by surveillance or by defendants' statements.

8. I have also had discussions with other law enforcement officers and cooperating individuals about gang investigations. In addition, during the course of my career, I have gained knowledge and expertise in the utilization by criminal street gangs of pen register and trap and trace devices; telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records, social media records, and utility records.

9. In my current position as an FBI Special Agent, I have investigated and participated in charging several federal cases involving violations of Title 18 United States Code, Section 922(g)(1) (felon in possession of a firearm), as well as other federal offenses.

## APPLICABLE STATUTES

10. Title 18 U.S.C. § 922(g)(1) prohibits a person from (1) knowingly possessing a firearm or ammunition, (2) that has been shipped or transported from one state or another or between a foreign nation and the United States, and (3) that at the time the individual possessed the firearm or ammunition, the individual knew that he had been convicted of a crime punishable by imprisonment exceeding one year (i.e., a felony) (hereafter referred to as the "Target Offense").

## FACTS SUPPORTING PROBABLE CAUSE

11. On July 13, 2021, San Francisco Police Department (SFPD) officers were conducting surveillance of Franklin E****,[1] who was wanted for an arrest warrant that had been issued by the City and County of San Francisco. The officers located Franklin E**** outside of a residence where he was known to frequent, located at 1757 82nd Avenue, Oakland, California. 1757 82nd Avenue is known to be a location where members and associates of several San Francisco street gangs, including "Eddy Rock," "Tre-4," and "Oakdale Mob," congregate.[2]

12. While conducting surveillance, at approximately 2:17 pm, the officers observed a maroon Dodge Charger arrive and parallel park in the street across from 1757 82nd Avenue. The Charger was known by me and other officers to frequent that residence and was also known to be driven by multiple associates of Franklin E****. Additionally, the officers believed that the Charger had been used in multiple residential burglaries that occurred in San Francisco on June 28, 2021. At the time of the surveillance, the officers were aware that the Charger was wanted in connection with those burglaries.

13. After the Charger parked, the driver got out and was identified as Jacobi SANFORD. SANFORD joined a group of individuals, including Franklin E****, who were congregating on the street in front of 1757 82nd Avenue. The officers observed other individuals in the group who the officers knew had outstanding arrest warrants. During the surveillance, no other individual was observed within or exiting the Charger—SANFORD was determined to be the only occupant.

14. Based on the presence of multiple individuals with outstanding warrants, including Franklin E****, as well as the Charger, which the officers believed to be the same Charger used in the San Francisco burglaries, the officers and I approached 1757 82nd Avenue. All of the individuals who were congregated on the street in front of 1757 82nd Avenue,

---

[1] The personal identifying information of third parties has been intentionally omitted.

[2] On December 16, 2020, an SFPD search warrant conducted at that residence resulted in the seizure of eight firearms.

4

including SANFORD, fled from the police, but law enforcement officers were able to detain SANFORD. I arrived on scene shortly after SANFORD was detained.

15.     Law enforcement, including me, approached the Charger, as it had been parked on the street, and looked inside of it. The Charger was unoccupied and the driver's side window was lowered. Clearly visible through the open window was an AR style rifle sitting on the front passenger seat of the Charger. A photograph of the rifle taken by the officers is set forth here:



16.     The officers ran a records check of the VIN of the Charger and learned that it had been reported stolen and was currently displaying a fraudulent license plate. The officers also noticed exterior damage on the Charger that matched the damage reported in one of the San Francisco burglary investigations, leading the officers to conclude that the Charger was in fact the vehicle that had been used in the burglaries that occurred on June 28, 2021 in San Francisco.

The Charger was towed for further investigation, and for safety reasons, the rifle was seized. Another photograph taken by me of the rifle before it was sized is set forth here:



17.     A criminal history records check of SANFORD revealed that he had previously been convicted of a felony and was on active felony parole. Based on the fact that SANFORD was the driver of the Charger, the Charger was stolen, and a firearm was seized from the Charger, SANFORD was arrested by the SFPD Officers for weapons possession, possession of a stolen vehicle, and burglary.

6

18. A cellular telephone in SANFORD's possession was seized pursuant to his arrest. Because law enforcement was aware that SANFORD was an active felony parole with a warrantless search condition that covered electronic devices, his cell phone was searched pursuant to the warrantless search condition of his parole. During the search of SANFORD's telephone, multiple videos depicting SANFORD and other individuals possessing weapons were located, including a video depicting SANFORD holding the rifle seized from the Charger. According to the video's metadata, the video was recorded two days prior, on July 11, 2021. A still image taken from the video is set forth here:



19. Based on my observation of the weapon seized from the Charger, and my review of the video located on SANFORD's telephone, I believe that the weapon in the video is the same weapon that was seized from the Charger. The weapon seized from the Charger was found

7

to be an Anderson Manufacturing AM-15, multi-caliber rifle, serial number 18061307. "Anderson Mfg." and "Hebron, KY" are stamped on the weapon. Research conducted on Anderson Manufacturing shows that it is headquartered in Hebron, Kentucky and that it manufactures complete weapons, weapon parts, and weapon accessories at its manufacturing plant located in Hebron, Kentucky. Additionally, I sent photographs of the AM-15 firearm to Bureau of Alcohol Tobacco Firearms and Explosives (ATF) Special Agent Daniel Garza. Special Agent Garza, who has testified in federal cases as an interstate nexus expert, informed me that firearm was manufactured outside of the state of California. Due to the firearm being manufactured outside of the state of California and being recovered in Oakland, California, there is probable cause to believe that the Anderson Manufacturing AM-15 rifle, serial number 18061307, traveled in interstate commerce.

20. I have reviewed SANFORD's criminal history and found that he has been convicted of multiple felonies. Specifically, SANFORD's criminal history shows that he (1) was convicted of a felony violation in or about 2015, for which he received a 4-year custodial sentence; and (2) was convicted of another felony violation in or about 2020, for which he received a 2-year custodial sentence.

21. Subsequent DNA testing of the AM-15 firearm found in the Charger revealed the DNA of at least one male, but no further analysis could be conducted due to the limited amount of DNA data retrieved from the AM-15 firearm.

22. Based on my training and experience, my personal observations of SANFORD driving the Charger, the location of the rifle in plain view in the Charger, and the video of SANFORD holding the rifle, I believe that the Anderson Manufacturing AM-15 rifle, serial number 18061307, seized from the maroon Dodge Charger on July 13, 2021 was in SANFORD's control and possession unlawfully, in violation of Title 18 United States Code, Section 922(g)(1).

**REQUEST TO SEAL**

23.     Because this is an ongoing criminal investigation, and in order to guard against the destruction of evidence, collusion among potential witnesses, and safety of witnesses, I respectfully request that this affidavit, the related arrest warrant, and any other documents relating to this application be filed under seal.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness and may also jeopardize law enforcement's ability to safely apprehend SANFORD in connection with the requested arrest warrant.

**CONCLUSION**

24.     On the basis of my participation in this investigation and the information summarized above, I have probable cause to believe that on or about July 13, 2021, in the Northern District of California, SANFORD knowingly possessed a firearm that had been shipped or transported from one state or another, and that at the time SANFORD possessed the firearm, he knew that he had been convicted of a crime punishable by imprisonment exceeding one year (i.e., a felony), in violation of Title 18, United States Code, Section 922(g).

_/s/ phone_
_____
Jacob D. Millspaugh
Special Agent
Federal Bureau of Investigation


Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 22 day of September 2021.  This complaint and warrant are to be filed under seal.

_____
HONORABLE NATHANAEL COUSINS
United States Magistrate Judge